## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

KURT EDWARD WILSON, as the
Executor of the Estate of Roscoe C.
Wilson,

                Plaintiff,

      v.

PNC BANK NATIONAL
ASSOCIATION,

                Defendant.

Case No. 21-cv-01131 (RMB/EAP)

**OPINION**

**APPEARANCES:**

Robert Matthew Rosenberg, Esq.
Ted M. Rosenberg, Esq.
Law Office of Ted M. Rosenberg, Esq.
321 New Albany Road, P.O. Box 97
Moorestown, New Jersey 08057

     *On behalf of Plaintiff*

Mark W. Fidanza, Esq.
Reed Smith LLP
Three Logan Square
1717 Arch Street, Suite 3100
Philadelphia, Pennsylvania 19103

     *On behalf of Defendant*

**RENÉE MARIE BUMB, Chief United States District Judge:**

     This matter comes before the Court upon the Motion for Summary Judgment

filed by Defendant PNC Bank National Association ("**PNC Bank**" or "**Defendant**").

[Mot. Summ. J., Docket No. 47 ("**Motion**"); Def.'s Statement of Undisputed Material Facts, Docket No. 47-4 ("**Def.'s SOMF**"); Def.'s Br. in Support of Mot. Summ. J., Docket No. 47-5 ("**Def.'s Br.**"); Def.'s Reply in Further Support of Mot. Summ. J., Docket No. 51 ("**Def.'s Reply Br.**").]  Plaintiff Kurt Edward Wilson, as executor of the estate of Roscoe C. Wilson ("**Plaintiff**"), opposes the Motion. [Br. in Opp'n to Mot. Summ. J., Docket No. 50 ("**Pl.'s Opp'n**"); Pl.'s Response to Def.'s SOMF, Docket No. 50-1 ("**Pl.'s RSOMF**").]  No oral argument was heard pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1(b).  For the reasons set forth below, the Motion will be **GRANTED**, and judgment as a matter of law will be entered in favor of Defendant.

## I.      FACTUAL BACKGROUND

This matter is a contractual dispute between Plaintiff, the nephew and succeeding executor of the estate of Roscoe C. Wilson ("**Decedent**"), and PNC Bank. [Def.'s SOMF ¶¶ 5, 9.]  Plaintiff seeks payment from PNC Bank as to ten Certificates of Deposit (the "**CDs**") that were issued to Decedent during his lifetime by PNC Bank's predecessors-in-interest but, according to Plaintiff, were never redeemed. [*Id.* ¶ 20; *see generally* Second Am. Compl., Docket No. 14.]  For the most part, the parties agree regarding the factual record.  [*Compare* Def.'s SOMF, *with* Pl.'s RSOMF.]  They disagree, however, as to whether the CDs were redeemed and whether Decedent was paid.  As the succeeding beneficiary of the estate, Plaintiff believes he is entitled to

compensation from PNC Bank for the CDs, which were valued at approximately $190,000 when issued over thirty years ago.

Between 1975 and 1989, Decedent purchased seven CDs from Marine National Bank and three CDs from Horizon National Bank. [Def.'s SOMF ¶¶ 13–14.] On January 1, 1989, Horizon National Bank acquired Marine National Bank and was subsequently renamed Chemical Bank of New Jersey ("**Chemical Bank**"). [*Id.* ¶ 10.] On October 7, 1995, Chemical Bank was acquired by PNC Bank, which assumed all then-existing Chemical Bank accounts. [*Id.* ¶¶ 11–12.]

The CDs at issue in this litigation are as follows:

| CD No.[2] | Issue Date | Principal Amount | Initial Maturity Date/Term | Initial Interest Rate (%) |
|---|---|---|---|---|
| 1 | March 2, 1984 | $20,000 | August 31, 1984 | 9.580 |
| 2 | April 5, 1983 | $20,000 | October 4, 1983 | 8.955 |
| 3 | March 3, 1987 | $20,000 | 183 days | 5.97 |
| 4 | March 3, 1988 | $20,000 | 183 days | 6.86 |
| 5 | March 3, 1989 | $20,000 | 183 days | 8.57 |
| 6 | March 11, 1975 | $10,000 | 48 months | 7.25 |
| 7 | February 4, 1982 | $20,000 | August 5, 1982 | 14.096 |
| 8 | March 5, 1982 | $20,000 | September 3, 1982 | 13.693 |
| 9 | March 1, 1985 | $20,000 | 182 days | 8.0 |
| 10 | March 3, 1986 | $20,000 | 183 days | 7.37 |

[*Id.* ¶ 14 (reproduced as presented); *see also* Certification of Mark W. Fidanza, Docket No. 47-2 ("**Fidanza Cert.**"), Ex. D, Docket No. 47-3 (copies of each original CD).]

Decedent died on February 15, 2002. [Def.'s SOMF ¶ 1.] Prior to his death, Decedent lived with his brother, Eddie Wilson, at 126 Indian Trail Road, Cape May

Court House, New Jersey (the "**Family Home**").[1]  [*Id.* ¶ 2.]  Eddie Wilson was Decedent's caretaker and Plaintiff's father.  [*Id.* ¶¶ 3, 5.]  On July 15, 2002, Eddie Wilson applied to probate Decedent's estate and became the executor thereof, [*id.* ¶ 4], but Eddie Wilson was diagnosed with dementia at some point between 2003 and 2006 and Plaintiff assumed his power of attorney.  [*Id.* ¶¶ 6, 7.]  Eddie Wilson died on September 19, 2017. [*Id.* ¶ 8.]  He apparently "never finished the probate process" for his brother.[2]  [*Id.* ¶ 19.]

In November 2017, after Eddie Wilson's death, Plaintiff discovered ten CDs in a lock box in the Family Home.[3]  [*Id.* ¶ 15.]  The lock box containing the CDs was, in fact, unlocked, but it was not out in the open.  [*Id.* ¶ 16.]  On August 30, 2018, Plaintiff was appointed as the succeeding executor of Decedent's estate.  [*Id.* ¶ 9.]  Plaintiff does not know what actions his father took as executor of Decedent's estate or whether his father ever came across the CDs.  [*Id.* ¶¶ 17, 18.]

After discovering the CDs, Plaintiff apparently searched for additional paperwork throughout the Family Home and produced all documents relevant to the

---

[1] Plaintiff claims that Decedent suffered from dementia, [Pl.'s RSOMF ¶ 3], which Defendant does not dispute or admit.  Accordingly, the Court assumes Decedent suffered from dementia.  *See Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995).

[2] According to Plaintiff, after his father died, Plaintiff discovered that his father never transferred Decedent's assets in accordance with Decedent's will.  [Wilson Cert. ¶ 18.]  For instance, he never transferred to himself the deed to the Family Home.  [*Id.*]

[3] Additionally, according to Plaintiff, he found the original deed to the Family Home, title to Decedent's Chevrolet truck, and an unredeemed 1958 U.S. Savings Bond.  [Wilson Cert. ¶ 23.]

CDs.  [*Id.* ¶ 24.]  For instance, Plaintiff found and produced a completed Marine National Bank application for CD No. 4, which is dated March 3, 1988 and signed by Decedent ("**CD No. 4 Application**").  [Certification of Kurt Edward Wilson, Docket No. 50-2 ("**Wilson Cert.**"), Ex. E, Docket No. 50-3.]  Plaintiff also found and produced automatic renewal notices from Chemical Bank between 1991 and 1995 regarding the CDs.  [*Id.*, Ex. J.]  Additionally, Plaintiff found and produced two IRS Form 1099-INT documents issued to Decedent for earned interest in tax year 1995— one by PNC Bank, and the other by Chemical Bank.  [Fidanza Cert., Ex. E.]  The documents refer to CDs.  However, Plaintiff does not know whether any of the interest reflected on the 1099-INT Statements relate to the CDs at issue here.  [Def.'s SOMF ¶¶ 28, 29.]  Furthermore, Plaintiff found and produced a monthly statement issued to Decedent by Chemical Bank for the period January to February 1995 (the "**Monthly Statement**").  [Wilson Cert., Ex. I.]  It is disputed whether any of the "CD" accounts reflected on the Monthly Statement are the CDs at issue here. [*Compare* Def.'s SOMF ¶¶ 29–30, *with* Pl.'s RSOMF ¶¶ 29–30.]  Plaintiff claims that "it is commonplace for banks to change account numbers after taking over new banks." [Wilson Cert. ¶ 32.] Thus, Plaintiff argues that there is a possibility that the "CD" accounts reflected on the Monthly Statement are, in fact, the CDs at issue here, even though the account numbers do not match. [*Id.*]

It is undisputed that Plaintiff did not find or produce any other records relating to Decedent's accounts from 1996 to the present.  [Def.'s SOMF ¶ 25.]  In addition,

Plaintiff does not know if either Decedent or Eddie Wilson, acting as Decedent's initial executor, filed tax returns after tax year 1995. [*Id.* ¶ 26.] Plaintiff does not know whether there has been activity in the CD accounts in the last 25 years. [*Id.* ¶ 23.]

PNC Bank conducted a thorough search, by name and social security number, of its system and records related to current and former account holders to identify any accounts owned by Decedent, but it could not identify any documents related to any of the CDs at issue. [*Id.* ¶ 35.] Also, PNC Bank was unable to find any records relating to the CDs in its escheat records. [*Id.* ¶ 36.]

As executor of the estate, Plaintiff brought the CDs to PNC Bank (as successor to Chemical Bank) and sought payment. On or about September 11, 2018, Plaintiff made a demand upon PNC Bank for payment of principal and all accrued interest with respect to CD No. 1. [Second Am. Compl. ¶ 26.] On or about February 26, 2020, Plaintiff made another demand upon PNC Bank for the payment of principal and accrued interest with respect to CD Nos. 2–10. [*Id.* ¶ 46, 65, 86, 105, 123, 141, 159, 177, 195.] PNC Bank rejected Plaintiff's first demand and did not respond to his second demand. [*Id.* ¶¶ 27, 47.]

## II.  PROCEDURAL HISTORY

On September 18, 2020, Plaintiff brought this action in the Superior Court of New Jersey, Law Division, Cape May County. [Docket No. 1-2.] Defendant removed the case to this Court on January 25, 2021 on the basis of diversity jurisdiction. [Docket No. 1.] Plaintiff filed a Second Amended Complaint, which alleges twenty counts, consisting of one state law breach of contract claim and one state law unjust

6

enrichment claim for each of the ten CDs at issue.  [Docket No. 14.]  Defendant filed a Motion to Dismiss on March 9, 2021, [Docket No. 16], which this Court denied without prejudice, [Docket No. 23].  Plaintiff then filed a Motion for Reconsideration on August 10, 2021, [Docket No. 24], which this Court denied, [Docket No. 36]. Defendant filed the pending Motion on December 19, 2022.  [Docket No. 47.]

## III.  LEGAL STANDARD

Summary judgment shall be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  A fact is "material" only if it might impact the "outcome of the suit under the governing law." *Gonzalez v. Sec'y of Dep't of Homeland Sec.*, 678 F.3d 254, 261 (3d Cir. 2012).  A dispute is "genuine" if the evidence would allow a reasonable jury to find for the nonmoving party. *Id.*

In deciding whether there is a genuine issue of material fact, the Court must view all inferences, doubts, and issues of credibility in favor of the non-moving party. *See Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995).  The movant has the initial burden of showing through the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits "that the non-movant has failed to establish one or more essential elements of its case." *Connection Training Servs. v. City of Phila.*, 358 F. App'x 315, 318 (3d Cir. 2009).  "If the moving party meets its burden, the burden then shifts to the non-movant to establish that summary judgment is inappropriate." *Id.*

In the face of a properly supported motion for summary judgment, the non-movant's burden is rigorous. The non-movant "must point to concrete evidence in the record"; mere allegations, conclusions, conjecture, and speculation will not defeat summary judgment. *Orsatti v. N.J. State Police*, 71 F.3d 480, 484 (3d Cir. 1995); *accord Jackson v. Danberg*, 594 F.3d 210, 227 (3d Cir. 2010) (noting that "speculation and conjecture may not defeat a motion for summary judgment") (citing *Acumed LLC v. Advanced Surgical Servs., Inc.*, 561 F.3d 199, 228 (3d Cir. 2009)).

## IV.   DISCUSSION

As noted, Plaintiff asserts ten breach of contract claims and, alternatively, ten unjust enrichment claims against Defendant based on Defendant's failure to pay Plaintiff for the ten CDs identified above. [*See generally* Second Am. Compl.] To prevail on its contract claims, Plaintiff must show (1) a valid contract between the parties, (2) that Plaintiff performed his contractual duties, (3) that Defendant breached the contract, and (4) that the breach resulted in damages. *See Federico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007). The failure of a depository institution to pay the holder of a certificate of deposit without justification is clearly a breach of contract. *See Forbes v. First Camden Nat'l Bank & Trust Co.*, 95 A.2d 416, 418 (N.J. Super. Ct. App. Div. 1953) ("The relation[ship] between a depositor and a bank is one of creditor and debtor, and their rights and liabilities depend upon the contract between them . . . [including the] rules printed in the passbook[.]"); *Griffith v. Mellon Bank, N.A.*, 173 F. App'x 131, 133–34 (3d Cir. 2006) ("A certificate of deposit consists of an

8

acknowledgment by a bank that a sum of money has been received with a promise to repay.  Thus a certificate of deposit is a debt.").[4]

In its Motion for Summary Judgment, Defendant raises the same arguments as in its Motion to Dismiss.  Defendant seeks dismissal of Plaintiff's claims based on the following three defenses.  *First*, Defendant argues that New Jersey's statutory presumption of payment pursuant to N.J. STAT. ANN. § 17:16W-4(a) (the "**Presumption of Payment**") applies, and Plaintiff has failed to adduce sufficient evidence to raise a jury question as to whether such presumption has been rebutted. [Def.'s Br. 8–14.]  Accordingly, Defendant submits that application of the presumption defeats Plaintiff's breach of contract claims.  *Second*, Defendant contends that, in the alternative, New Jersey's statutory presumption of abandonment pursuant to N.J. STAT. ANN § 46:30B-18 (the "**Presumption of Abandonment**") applies, and Plaintiff has failed to adduce the evidence required to rebut that presumption as well.  [*Id.*]

---

[4] The Court does not address Plaintiff's unjust enrichment claims.  In his Opposition, Plaintiff states that his claims are "based entirely on a breach of contract theory," that he "solely seeks monetary damages for the damages arising out of that breach," and that "[t]here is no doubt that [] [P]laintiff's claims in this lawsuit are based in law and not equity."  [Pl.'s Opp'n 19.]  Additionally, he makes no arguments concerning his unjust enrichment claims in his Opposition.  Therefore, the Court need not consider the claims, as it appears that Plaintiff has withdrawn them and is proceeding exclusively on the theory that the CDs constitute enforceable agreements. *See Goldsmith v. Camden Cnty. Surrogate's Office*, 975 A.2d 459, 463 (N.J. Super. Ct. App. Div. 2009) (observing that "unjust enrichment is not an independent theory of liability but is the basis for a claim of quasi-contractual liability") (citation omitted); *MK Strategies, LLC v. Ann Taylor Stores Corp.*, 567 F. Supp. 2d 729, 733–34 (D.N.J. 2008) ("A quasi-contract claim cannot exist when there is an enforceable agreement between parties.") (citing *Callano v. Oakwood Park Homes Corp.*, 219 A.2d 332, 334 (N.J. Super. Ct. App. Div. 1966)).

*Third*, even if Plaintiff's claims are not barred by the statutory presumptions, Defendant submits that the equitable doctrine of laches should defeat Plaintiff's claims. [*Id.* at 14–17.]

The Court addresses each argument in turn.

## A.    The Presumption of Payment.

As a preliminary matter, in its July 28, 2021 Opinion resolving Defendant's Motion to Dismiss, the Court found that the Presumption of Payment applied to Plaintiff's claims.  [Docket No. 22, at 5 ("**MTD Op.**"); *see also Wilson v. PNC Bank Nat'l Ass'n*, 2021 WL 3185798, at *2–3 (D.N.J. July 28, 2021).]  To the extent Plaintiff now asserts that the Presumption of Payment does not apply because the CDs here—which were issued between 1979 and 1989—pre-date the October 1999 effective date of N.J. STAT. ANN. § 17:16W, *et seq.*, [see Pl.'s Opp'n 12], Plaintiff's argument is rejected.[5]

---

[5] Though § 17:16W-4 is not often cited, courts have considered whether the presumptions set forth therein apply to passbooks that pre-date 1999—and they do. *See, e.g.*, *Slinko-Shevchuk v. Ocwen Fin. Corp.*, 2014 WL 2587579, at *1, *2 (D.N.J. June 9, 2014) (addressing whether the Presumption of Payment applied to a CD issued in 1988); *Slinko-Shevchuk v. Ocwen Loan Servs., LLC*, 2019 WL 178462, at *3 (N.J. Super. Ct. App. Div. Jan. 14, 2019) (indicating that presumption of § 17:16W-4(c) was not available to plaintiff who did not comply with its statutory terms as to same CD issued in 1988); *Ayad v. Fleet Bank*, 2005 WL 3991111, at *2 (N.J. Super. Ct. App. Div. May 10, 2006) (explaining that plaintiff could meet initial burden of production to establish prima facie case of entitlement to payment for 1995 CD under § 17:16W-4(c) by presenting CD and the sworn certificate contemplated by the act).  To be clear, this treatment is notwithstanding the fact that such CDs were acquired prior to statutory modification of the common law rule reflected in *Pagano v. United Jersey Bank*, 648 A.2d 269, 272–73 (N.J. Super. Ct. App. Div. 1994)—that presentation of an uncancelled instrument of obligation (such as a CD) shifted the burden of proving payment from the creditor (*i.e.*, the owner of the instrument) to the debtor (*i.e.*, the financial

Under the New Jersey law, if a "passbook" is presented to a bank that has no record of the applicable account and no record of payment of the account to the State of New Jersey (pursuant to any applicable escheat or unclaimed property act), three rebuttable presumptions apply.  N.J. STAT. ANN. § 17:16W-4(a)–(c).  In relevant part, the Presumption of Payment provides as follows:

> If the presentation of the passbook is made by a successor of the owner more than 15 years after the date of the passbook, there shall be a rebuttable presumption that the account was paid in full to or on behalf of the owner or to a successor of the owner. The passbook itself does not rebut this presumption.

*Id.* § 17:16W-4(a).  The term "passbook" refers to "a document or record issued by a financial institution" that represents "an obligation of the financial institution," including a certificate of deposit.  *Id.* § 17:16W-2;[6] *see also* MTD Op. 5 (finding that the CDs at issue here are "passbooks" within the meaning of § 17:16W-2 and noting the parties' agreement to same).

---

institution).  Accordingly, Plaintiff cannot argue that the statutory Presumption of Payment does not apply to the CDs at issue here.

[6] In particular, a "passbook" is defined as follows:

> [A] document or record issued by a financial institution, which document or record represents an obligation of the financial institution, which obligation either has no fixed maturity or due date or which by its term is subject to automatic renewal or renewals for an indefinite time or indefinite number of times. Neither a periodic account statement nor any obligation for which applicable law provides a time by which the payment is due is a passbook for the purposes of this act.

N.J. STAT. ANN. § 17:16W-2.

Additionally, as the Court previously determined, the plain text of § 17:16W-4(a) precludes a party from using the passbook itself—*as well as the terms and conditions reflected in the text of the passbook*—to rebut the application of the Presumption of Payment.  N.J. STAT. ANN. § 17:16:W-4(a) ("The passbook itself does not rebut this presumption."); *see also* MTD Op. 7 & n.3 (explaining that the "contractual language" cannot be used to rebut the Presumption of Payment, as "[i]t appears long-established that contractual terms printed in a passbook are a part of the passbook itself, and are not simply separate terms that accompany it") (citing *Forbes*, 95 A.2d at 18; *Gordon v. Toler*, 83 N.J. Eq. 25, 27 (N.J. Ch. 1914)).[7]  By its very terms, once the Presumption of Payment is invoked as a defense, it is Plaintiff's burden to adduce evidence sufficient

---

[7] In his Opposition, Plaintiff urges the Court to revisit its prior analysis and find that the contractual language included in a passbook may be used as evidence to rebut the Presumption of Payment.  [Pl.'s Opp'n 21–25.]  Plaintiff contends that the presumptions set forth in § 17:16W-4, read together, reveal that the New Jersey Legislature's focus was on the inference associated with physical "presentation" of the passbook, not the terms and conditions of redemption.  [*Id.*]  The Court remains unpersuaded by this argument.  As it previously explained, § 17:16W-4(a) precludes the use of a passbook's terms and conditions as evidence because to determine whether an instrument is a passbook, one must necessarily look to the contractual language.  Thus, the plain language of the rule provides that an instrument itself cannot be used in any capacity to demonstrate that the financial institution failed to pay the owner.  [See MTD Op. 7–8.]  Furthermore, the Legislature clearly could have excluded terms and conditions from the definition of "passbook" had it wished to permit a party to use such information as evidence to rebut the presumption.  [*Id.* at 8.]  Because the Legislature did not, it would be inappropriate for this Court to read such an exception into § 17:16W-4(a).  This result, while perhaps rigid, accords with the statutory regime's purpose to "prevent fraud against financial institutions."  *See* N.J. STAT. ANN. § 17:16W-1.  Where there has been a fifteen-year delay seeking redemption of an instrument such as a CD, evidence beyond the passbook is required to establish nonpayment.

to rebut the presumption.  *See* N.J. STAT. ANN. § 17:16W-4(a); *see Slinko-Shevchuk v. Ocwen Fin. Corp.*, 2014 WL 2587579, at *3 (D.N.J. June 9, 2014) (dismissing a plaintiff's complaint due to her failure to plead facts demonstrating that she could rebut the Presumption of Payment at later stage in the litigation).  Plaintiff thus must introduce direct or circumstantial evidence tending to disprove the presumed fact— that Defendant paid Decedent (or a successor-in-interest) for the CDs—and if such evidence is introduced, the issue should be submitted to the trier of fact.  *See* N.J. R. EVID. 301; *cf. Griffith v. Mellon Bank, N.A.*, 328 F. Supp. 2d 536, 542 (E.D. Pa. 2004) (noting that, under Pennsylvania common law, creditor was required to introduce (1) "direct evidence, i.e. direct testimony as to nonpayment" or (2) "circumstantial evidence, i.e. proof of circumstances tending to negative the likelihood of payment" to meet the burden of rebutting the presumption of payment) (internal quotation marks and citations omitted).

In its Motion, Defendant first argues that Plaintiff is required to introduce "clear and convincing" evidence[8] to rebut the Presumption of Payment, [Def.'s Br. 11 & n.5], which Defendant contends Plaintiff cannot do, [*id.* at 11–14].  In support, Defendant cites *Gagliano v. Maggio*, 108 A.2d 185, 224 (N.J. Super. Ct. App. Div. 1954), *Kieffer v.*

---

[8] By "clear and convincing evidence," Defendant means:

[E]vidence that produces in your minds a firm belief or conviction that the allegations sought to be proved by the evidence are true.  It is evidence so clear, direct, weighty in terms of quality, and convincing as to cause you to come to a clear conviction of the truth of the precise facts in issue.

*N.J. Model Civil Jury Charges* § 1.19 (2009).

*New Century Fin. Servs., Inc.*, 2011 WL 1899272, at *2 (D.N.J. May 19, 2011), *Begelman, Orlow & Melletz v. Ehrlich*, 2018 WL 2071124, at *2 (N.J. Super. Ct. App. Div. May 4, 2018), and *In re Accutane Litig.*, 194 A.3d 503, 532 (N.J. 2018) for the proposition that rebuttable presumptions can only be rebutted by clear and convincing evidence. Plaintiff, by contrast, disputes Defendant's evidentiary argument and contends that a lower "quantum of evidence" is necessary to rebut the Presumption of Payment, as the quantum was not expressly heightened by statute or judicial canon (as in the cases cited). [Pl.'s Opp'n 13–18.]  Because the Court will conclude that Plaintiff has not adduced sufficient evidence under either threshold to preclude judgment as a matter of law, see *infra* pp. 17 and 20, the Court declines to resolve which standard specifically applies.

Next, Defendant contends that Plaintiff has failed to introduce any credible evidence to rebut the Presumption of Payment as to each of the CDs.  It argues that, because Plaintiff has not identified a single document related to the CDs after 1995, such as Decedent's financial or tax records, there is no evidence by which a reasonable jury could determine that Defendant did *not* pay Decedent (or a successor-in-interest) for the CDs.  [Def.'s Br. 11–12.]  In response, Plaintiff principally focuses on the contractual language of the CDs as evidence by which a reasonable person could conclude that Defendant did not pay Decedent.  [Pl.'s Opp'n 14.]  But, as the Court already explained, the terms and conditions reflected in a passbook are not credible evidence raising a genuine dispute of material fact as to nonpayment.  See *supra* p. 12 and note 7.  Beyond the contractual text, Plaintiff points to the additional documents

14

he produced, contending that they raise issues of fact as to whether he has rebutted the Presumption of Payment.  [Pl.'s Opp'n 11–12.]

The Court is not persuaded.  *First*, the CD No. 4 Application that Plaintiff points to does not rebut the Presumption of Payment as to CD No. 4.  Though the March 3, 1988 application indicates that redemption of the CD required presentation of the physical certificate to a Marine National Bank branch, [*see* Fidanza Cert., Ex. H § 6 ("6. Payment of Principal. In order to redeem my certificate, I must bring the certificate to any one of your branches.")], it does not indicate that *surrender* of the document was required for redemption.  In any case, the document does not explain whether payment occurred at some point over the next 25 years.  As Plaintiff has admitted, he was not able to locate any records related to Decedent's CDs from 1996 onwards.  [Def.'s SOMF ¶ 25; Pl.'s RSOMF ¶ 25.]  Therefore, the existence of the CD No. 4 Application does not raise a reasonable inference that Defendant never paid Decedent or Eddie Wilson for CD No. 4.  Accordingly, it is not credible evidence that raises a genuine issue of material fact as to whether Plaintiff has rebutted the Presumption of Payment as to such CD.

*Second*, the other documents Plaintiff has produced do not rebut the Presumption of Payment as to CDs Nos. 1–3 and 5–10 for the same reason.  For instance, Plaintiff has produced CD renewal notices from Chemical Bank ranging from 1991 to 1995. [Wilson Cert., Ex. J.]  These notices, however, also do not speak to whether the CDs were renewed—or, pertinently, redeemed—after 1995 or whether Defendant failed to pay Decedent or Eddie Wilson at some point after each successive

automatic renewal period ended.  Similarly, the two IRS Form 1099-INT documents issued to Decedent—one by PNC, and the other by Chemical Bank—for the tax year 1995 are, perhaps, some evidence that the CDs at issue here were not redeemed prior to 1995,[9] [Fidanza Cert., Ex. E], but they do not address the material question of whether payment occurred by Defendant thereafter.  Finally, the Chemical Bank Monthly Statement from 1995 fails to evince a genuine issue of material fact for the same reason.[10] [Wilson Cert., Ex. I.]

In sum, Plaintiff has failed to demonstrate that there are disputed factual issues that preclude summary judgment.  Neither the CDs themselves nor the "additional

---

[9] Because the reference numbers on the physical certificates maintained by Plaintiff do not match the reference numbers contained on the IRS Form 1099-INT documents, Plaintiff has only suggested a possibility that the latter documents refer to the CDs at issue here.  [Def.'s SOMF ¶¶ 29, 30; Pl.'s RSOMF ¶¶ 29, 30.]  Plaintiff seems to suggest that such documents represent direct evidence and, further, that they rebut the Presumption of Payment; however, such evidence, is only circumstantial and, for the reasons discussed, does not demonstrate nonpayment in the years following 1995.

[10] Plaintiff submits that a genuine issue of fact exists as to whether the Presumption of Payment is rebutted as to CD Nos. 4 and 6 because, though their reference numbers do not match the account numbers listed on the Monthly Statement, other relevant details appear to match.  [Wilson Cert. ¶¶ 32–36.]  For instance, CD No. 4 and account number 6805-83376 refer to the same principal amount of $20,000, and based on the 183-day maturity term for CD No. 4, it would have eventually matured on March 10, 1995 (matching the CD referred to on the Monthly Statement).  [*Id.* ¶ 36 ("There is no doubt in my mind that it is the same CD.").]  Again, these details may raise a factual question as to whether account number 6805-83376 in fact refers to CD No. 4, but they do not constitute relevant evidence addressing the pertinent inquiry—whether Plaintiff can rebut the Presumption of Payment—because they only speak as of 1995.  Therefore, the suggestion that the account referenced on the Monthly Statement is the same as CD No. 4 is not circumstantial evidence of continued renewal and nonpayment.  More recent information is necessary to rebut the presumption.

evidence" adduced by Plaintiff would enable a reasonable jury to find that the Presumption of Payment has been rebutted. Such documents are simply not direct or circumstantial evidence of nonpayment. Accordingly, Plaintiff cannot prevail as to his claims for breach of contract. Judgment as a matter of law is thus warranted in favor of Defendant for this reason alone.

### B.   The Presumption of Abandonment.

Next, the Court turns to Defendant's argument that the Presumption of Abandonment independently defeats Plaintiff's claims. [Def.'s Br. 10–14.] Defendant contends that Plaintiff has not introduced any evidence to rebut the presumed fact that Decedent long-ago abandoned the CDs. [*Id.*] As such, Defendant submits that the Presumption of Abandonment shields it from liability here. [*See id.*]

As part of New Jersey's Uniform Unclaimed Property Act ("**UUPA**"), N.J. STAT. ANN. § 46:30B-1, *et seq.*, there is a presumption that:

> [a] demand, savings, or time deposit, including a deposit that is automatically renewable, and any funds paid toward the purchase of a share, a mutual fund investment certificate, or any other interest in a financial organization is presumed abandoned three years after the earlier of maturity or the date of the last indication by the owner of interest in the property, but a deposit that is automatically renewable is deemed matured for the purposes of this section upon its initial date of maturity[.]

*Id.* § 46:30B-18. The statute also includes a proviso identifying several circumstances that would avoid application of the Presumption of Abandonment. *Id.* § 46:30B-18(a)–(e). For instance, written communications between a financial institution and the owner of the presumptively abandoned property regarding such property would rebut the presumption. *Id.* § 46:30B-18(b).

In its July 28, 2021 Opinion, the Court determined that the Presumption of Abandonment applied to Plaintiff's claims because it was undisputed that more than three years had passed since maturity of all ten CDs. [MTD Op. 9.] However, it refused to grant Defendant's Motion to Dismiss for failure to state a claim, affording Plaintiff the opportunity to conduct discovery to identify evidence (if available) that could be used to rebut the presumption, such as communications between Decedent and Defendant over the years. [*Id.* at 11.] In its discussion, the Court further determined that Defendant was not required to introduce evidence that the funds representing the CDs had been escheated to the New Jersey Unclaimed Property Administration ("**NJUPA**") in order to warrant application of the Presumption of Abandonment. [*Id.* at 10 & n.4 (citing N.J. STAT. ANN. § 46:30B-61).] As § 46:30B-18 makes clear, the Presumption of Abandonment arises by virtue of the *owner's* inaction for the applicable period as to the unclaimed property; as the presumed holder of the CDs, Defendant and its conduct transferring custody of the CDs to the NJUPA are not at issue. The pertinent question is whether Plaintiff has adduced sufficient evidence to rebut the Presumption of Abandonment.

At this juncture, Plaintiff has failed to do so. In particular, he has not produced any documentation or other evidence tending to show the existence of any of the exceptions that would defeat the presumption. For example, he was not able to identify any communications between PNC Bank and Decedent after 1995 concerning the CDs at issue here. Nor did Plaintiff take any depositions of PNC Bank witnesses or identify any expert disclosures either. [Def.'s SOMF ¶¶ 37–38.] For its part,

Defendant was not able to identify, after a search of its system (by name and social security number), any accounts owned by Decedent or any documents related to the CDs in its escheat records. [Def.'s SOMF ¶¶ 35–36.] Defendant apparently searched as far back as its record retention policy would permit (*i.e.*, seven years). [*Id.* ¶ 34.] Accordingly, because none of the exceptions is established by competent evidence, *see* N.J. STAT. ANN. § 46:30B-18(a)–(e), Defendant is entitled to the presumption that Decedent abandoned the CDs.

On this score, Plaintiff's only argument does not warrant a different result. Rather than demonstrating evidence to rebut the presumption, Plaintiff suggests that he has met his burden "by coming forward to claim the property as its legal and equitable owner"—that "[n]othing more is required under the UUPA." [Pl.'s Opp'n 7.] Plaintiff's argument focuses on the procedures used by the NJUPA for individuals to submit a claim for escheated property. He explains that because the Administrator of the NJUPA requires nothing more to rebut the Presumption of Abandonment as to escheated property than an executed copy of its claims form, [Wilson Cert., Ex. L], it would be "illogical" to require Plaintiff to provide anything else to rebut the Presumption of Abandonment as to the CDs here. [*Id.* at 9.] But the Court fails to understand how this argument entitles Plaintiff to prevail on his contract claims. Defendant has no record of the CDs—in its escheatment files or otherwise—and Plaintiff has not introduced any evidence, beyond the physical certificates themselves, tending to show why the statutory presumption does not apply.

Therefore, consistent with the analysis set forth above, see *supra* pp. 10–17, Defendant is entitled to the Presumption of Abandonment. As a result, Plaintiff cannot prevail as to his claims for breach of contract. Judgment as a matter of law is thus warranted in favor of Defendant for this independent reason.

## C.    The Doctrine of Laches.

Finally, the Court addresses Defendant's alternative argument that Plaintiff's claims should be barred under the doctrine of laches, regardless of the Presumption of Payment or the Presumption of Abandonment. [Def.'s Br. 14–17.] In its July 28, 2021 Opinion, the Court refused to grant the Motion to Dismiss on this basis, finding that Defendant had failed to establish that it was entitled to the defense. [MTD Op. 12.]

The doctrine of laches "is invoked to deny a party enforcement of a known right when the party engages in an inexcusable and unexplained delay in exercising that right to the prejudice of the other party." *Knorr v. Smeal*, 836 A.2d 794, 800 (N.J. 2003). Prejudice against a defendant is a core requirement of the doctrine of laches, and a successful laches defense "requires proof of (1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense." *Mancini v. Twp. of Teaneck*, 846 A.2d 596, 600 (N.J. 2004) (quoting *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 121–22 (2002)). In addition, key factors to be considered in deciding whether to apply the doctrine are "the length of the delay, the reasons for the delay, and the changing conditions of either or both parties during the delay." *Lavin v. Hackensack Bd. of Educ.*, 447 A.2d 516, 520 (N.J. 1982) (internal quotation marks omitted).

Here, Plaintiff first argues that his claims cannot be barred by laches because the doctrine is based in equity and his claims are based in law.  [Pl.'s Opp'n 18–19 (citing *Fox v. Millman*, 45 A.3d 332 (N.J. 2012)).]  As such, he contends that the applicable statute of limitations for enforcing CD obligations—see N.J. STAT. ANN. § 12A:3-118(e)—controls, and laches is thus not a viable defense to his contract claims because he has asserted them within six years from the date of his initial demand letter to PNC Bank (*i.e.*, on September 11, 2018).  [*Id.*]  The statute of limitations provides that an action seeking payment of a CD must be commenced "within six years after demand for payment is made to the maker."  N.J. STAT. ANN. § 12A:3-118(e).

In *Fox*, the court discussed the operation of the equitable doctrine of laches in actions based in equity versus actions based in law.  45 A.3d at 341–42.  Traditionally, in an action based in law as to which there is an applicable statute of limitations, invoking the doctrine of laches to preclude a claim within the statutory period "is no defense" at all.  *Id.* at 342 (quoting *United States v. Mack*, 295 U.S. 480, 489 (1935) (internal quotation marks omitted)).  This has been the "usual rule" in New Jersey.  *Id.* ("[W]here the suit was started well within the statute of limitations, and the right asserted being a legal one, the statute controls in equity as well as at law, at least with respect to the demand for a money judgment.") (quoting *West Park Ave., Inc. v. Ocean*, 224 A.2d 1 (N.J. 1966)) (cleaned up).

21

However, Plaintiff's reliance on the "usual rule" articulated in *Fox* is misplaced. Discussing footnote one in *Lavin v. Hackensack Bd. of Educ.*,[11] the *Fox* court explained that laches may be an appropriate defense in "the rarest of circumstances" where "overwhelming equitable concerns" warrant its application notwithstanding the applicability of a statute of limitations. 45 A.3d at 344. In essence, the court rejected the doctrine of laches in actions at law only in the "ordinary" dispute. *Id.*

The present matter is not such a case. Here, the CDs at issue are over thirty years old; Plaintiff discovered the CDs in 2017 after his father died; Plaintiff does not know in fact whether the CDs were ever redeemed; after the close of discovery, there

---

[11] In *Lavin*, the court noted that laches may be an appropriate defense to defeat a claim even though it is within the period of an analogous statute of limitations where there had been an unreasonable delay prosecuting the claim and other extraordinary circumstances had obtained. Specifically, the court stated as follows:

> Where a legal and an equitable remedy exist for the same cause of action, equity will generally follow the limitations statute. *See Cole v. Brandle*, 127 N.J.Eq. 31, 38, 11 A.2d 255 (E. & A. 1940). Where the equitable cause of action is analogous to the one at law, laches may depend solely on the comparable statute of limitations. See discussion in Story, 1 Equity Jurisprudence 61–62 (13th ed. 1886).

> Because laches is an equitable principle aimed to promote justice, conditions or circumstances may make it inequitable to prosecute a claim after a period shorter than that fixed by the statute of limitations. Thus where there has been an unreasonable delay, laches has been applied to defeat a claim despite the fact that the time fixed by the analogous statute of limitations has not passed. *Patterson v. Hewitt*, 195 U.S. 309, 319, 25 S.Ct. 35, 37, 49 L.Ed. 214, 218 (1904). Even if the cause of action in this case were deemed to be similar to a claim for breach of contract, it would be appropriate to consider the applicability of laches.

*Lavin*, 447 A.2d at 520 n.1.

has been no other evidence produced related to the CDs since 1995; the holder of the CDs has changed hands, through business combinations, multiple times; and (most importantly) Defendant has not been able to identify any record of the CDs after searching its system as far back as its record retention policy would permit.  In brief, the passage of time has eliminated the credible evidence necessary to resolve this dispute.  These surrounding circumstances demonstrate an extraordinarily prejudicial scenario for PNC Bank to defend.  *See Lavin*, 447 A.2d at 520 & n.1.

Having said that, however, the Court concludes that application of the doctrine of laches is not appropriate in this case.  Though the core requirement to establish laches is prejudice to the defendant, *see Mancini*, 846 A.2d at 600, there is not a genuine dispute regarding Plaintiff's lack of diligence here—the second element of the defense, *see id.*  True, decades have passed since the CDs were originally issued and PNC Bank maintains insufficient documentation at this juncture to validate Plaintiff's claims or prove payment or escheatment, but the surrounding circumstances do not establish "inexcusable and unexplained delay" by Plaintiff in prosecuting this action.  *See Knorr*, 836 A.2d at 800.  To the contrary, Plaintiff demanded payment for the CDs in 2018 not long after discovering them and well within the six-year statute of limitations provided by § 12A:3-118(e).  Therefore, the Court finds that the doctrine of laches is not an independent reason to grant summary judgment.  Instead, the Court will issue judgment as a matter of law to Defendant only because Plaintiff has not adduced the evidence necessary to raise a jury question as to whether he has rebutted the Presumption of Payment or the Presumption of Abandonment.

23

## V.    CONCLUSION

For the reasons expressed above, the Court will **GRANT** Defendant's Motion

for Summary Judgment as to Plaintiff's breach of contract claims regarding all ten CDs.

An accompanying Order shall issue.


**July 31, 2023**                                                 **s/Renée Marie Bumb**
DATE                                                              RENÉE MARIE BUMB
                                                                  Chief United States District Judge